**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Judith A. Watts,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>    Defendant. | No. CV11-00107-PHX-NVW<br><br>**ORDER** |

Judith A. Watts seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    Background**

    **A.    Factual Background**

Watts was born on March 29, 1948. She was 58 years old as of January 1, 2007, the alleged disability onset date. She graduated from high school in 1966 and thereafter completed an associate's degree in biology. From 1984 to 1997, she performed data entry and other clerical work for CIGNA Health Care. She was terminated for not completing

assigned work. From 1997 to 1999, Watts did temporary jobs, including data entry, clerical, and reception work. From 1999 to 2007,[1] she worked as a receptionist/administrative assistant for the Arizona Kidney Foundation. She quit working because of the stress.

Watts has been diagnosed with degenerative disc disease of the spine and neck, osteoarthritis of the knee, migraine headaches, a bipolar disorder, type II diabetes with complications, hypertension, obesity, acute gastritis, and polymyalgia rheumatica (an inflammatory disorder that causes muscle pain and stiffness). She has been prescribed prednisone and Robaxin for her joint pain, Imitrex and Ultram for her migraine headaches, and Prilosec, benazepril, Glucophage, Zocor, and TriLipix. She also has been diagnosed with depression, anxiety, and bipolar disorder with periodic panic attacks, for which at various times she has been prescribed Effexor, Celexa, Prozac, Paxil, Lamictal, Wellbutrin, Seroquel, and Topamax. She has reported that at various times she has had decreased energy and difficulty sleeping, thinking, concentrating, and remembering. The record does not include any opinions regarding whether any of Watts' prescribed medications may cause or exacerbate the symptoms of her mental impairments.

**B.     Procedural History**

On July 13, 2007, Watts applied for disability insurance benefits, alleging disability beginning January 1, 2007. The application was denied on initial review and again on reconsideration, after which Watts requested that her claim be heard by an ALJ. On August 18, 2009, an administrative hearing was held at which Watts testified and was represented by counsel. Marilyn F. Kinnier, an impartial vocational expert, also appeared and testified at the administrative hearing.

---

[1]The record does not clearly indicate when Watts quit her last job. Her alleged onset date of disability is January 1, 2007, and the ALJ found that she has not engaged in substantial disability since January 1, 2007.

- 2 -

On January 13, 2010, the ALJ issued his decision that Watts was not disabled within the meaning of the Social Security Act. He found that Watts is capable of performing her past relevant work as a receptionist and as a data entry clerk.

On November 20, 2010, the Appeals Council denied Watts' request for review of the ALJ's unfavorable decision, making that decision the final decision of the Commissioner. On January 14, 2010, Watts sought judicial review of the decision pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.     Standard of Review

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

If the ALJ's decision is not supported by substantial evidence or suffers from legal error, the court has discretion to reverse and remand either for an award of benefits or for further administrative proceedings. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "Remand for further proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose,

the district court should remand for an immediate award of benefits." *Id.* (citing *Smolen*, 80 F.3d at 1292).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III. Five-Step Sequential Evaluation Process

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). If the ALJ determines that the claimant is disabled or not disabled at any step, the ALJ does not continue to the next step. The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meet or equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's

residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

**IV.     Analysis**

The ALJ found that Watts meets the insured status requirements of the Social Security Act through September 30, 2012, and, at step one, she has not engaged in substantial gainful activity since January 1, 2007. At step two, the ALJ found that Watts had the following impairments, which are severe when they are considered in combination: degenerative disc disease (cervical and lumbar), osteoarthritis of the knee, migraine headaches, and a bipolar disorder. At step three, the ALJ found that Watts did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Watts does not raise any issues related to the ALJ's determinations at the first three steps of the five-step sequential evaluation process. She challenges the ALJ's weighing of medical source evidence and rejection of Watts' symptom testimony in his determination of her residual functional capacity at step four.

**A.     Weighing Medical Source Evidence**

**1.     Legal Standard**

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for

"clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given *controlling* weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and

extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

### 2. The ALJ Did Not Err in Granting No Weight to Treating Psychiatrist Dr. Robert Zenner's Mental Functional Capacity Assessments.

Watts contends the ALJ erred by "granting no weight to the mental functional capacity assessments of treating psychiatrist Zenner." The hearing decision states:

> Dr. Zenner opined that the claimant was markedly limited in her ability to remember locations and work procedures, understand and remember detailed instructions, maintain concentration, and perform activities within a schedule, maintain regular attendance, and be punctual (Ex. 17F, pg. 5). [H]e further opined that the claimant would be markedly limited in her ability to complete a normal workweek without interruption from psychological symptoms, and would experience episodes of decompensation (Ex. 17F, pg. 7). Dr. Zenner's opinion is not supported by his own medical records (Ex. 19F) nor is it consistent with the other psychological findings in the record (Exs 1F, 2F). Furthermore, Dr. Zenner offers no objective evidence to support his opinion; it must also be noted that he had treated the claimant for no more than six weeks at the time he drafted this opinion and appears to have based his opinion off of the claimant's subjective complaints (Ex. 17F, pg. 2). For all of these reasons Dr. Zenner's opinion is granted little, if any, weight.

The ALJ provided specific, legitimate, clear, and convincing reasons supported by substantial evidence in the record for granting Dr. Zenner's opinion "little, if any,

weight." He expressly considered the length of the treatment relationship, relevant evidence supporting the opinion, and consistency with the record as a whole.

Nurse Practitioner Kathe Reitman treated Watts from September 2004 through July 2007. Each of Reitman's progress notes, which the ALJ cited to, indicated that Watts' memory, attention/concentration, and thought processes were intact. Dr. Zenner began treating Watts on May 28, 2009, and completed a Psychiatric/Psychological Impairment Questionnaire six weeks later on July 9, 2009. During her initial intake, Dr. Zenner noted regarding Watts' thought process that her "association" was "logical" and "stream of thought" was "unremarkable." He also described her insight and judgment as "good." For most of the days Dr. Zenner saw Watts, he noted that her "concentration/cognition" was "good." But six weeks later Dr. Zenner opined that she had marked limitations in memory and concentration and would likely be absent from work more than three times per month as a result of her impairments or treatment.

Watts contends that Dr. Zenner's opinion is consistent with his notes stating that her affect was blunt and her mood depressed. She does not dispute, however, that his opinions regarding her memory and concentration are contradicted by his treatment notes. Moreover, she does not contend that her absences from work were caused by her bipolar disorder, blunt affect, or depressed mood. In fact, she testified that her absences were due to migraine headaches.

Thus, the ALJ did not err by granting Dr. Zenner's opinion "little, if any, weight."

**B.     Subjective Symptom Testimony**

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the

- 8 -

severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). To support a lack of credibility finding, the ALJ is required to point to specific facts in the record that demonstrate that Watts' symptoms are less severe than she claims. *Id.* at 592.

To be found credible regarding subjective pain or fatigue, a claimant is not required to: (1) produce objective medical evidence of the pain or fatigue itself, or the severity thereof; (2) produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom; or (3) show that her impairment could reasonably be expected to cause the severity of the alleged symptom, only that it could reasonably have caused some degree of the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

### 2. The ALJ Did Not Err by Finding Watts' Subjective Symptom Testimony Not Credible.

The hearing decision states:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Watts contends that the ALJ erred by finding Watts' subjective complaints regarding the severity of the symptoms of her mental impairment not credible. However, the ALJ provided specific, clear, and convincing reasons for rejecting Watts' testimony about the severity of her symptoms of mental impairment.

The ALJ identified treatment and examination records that stated not only what psychiatric providers directly observed, but also what Watts reported to them regarding the severity of her symptoms. The records show Watts has mild depression that is generally controlled by medication and she has had a few episodes that have been characterized as manic. She testified that she has dealt with depression all of her life, but was diagnosed with a bipolar disorder a few years ago. Watts also testified that she quit

- 9 -

1 her job in 2007 because of the stress caused by her employer's expectations and that she
2 experiences much less stress not working. Additionally, she reported experiencing
3 anxiety regarding her disability application.
4       In her opening brief, Watts states that the "main problem" with the ALJ's analysis
5 "is that Ms. Watts' depression, while it may have yielded only mild findings on mental
6 status examination, is only 'mild' now that she is not working." The brief contends that
7 when she was working, her "inability to deal with workplace stresses, to maintain
8 concentration, to meet the demands of a schedule, to abide regular attendance, and to
9 persist and a regular pace" is demonstrated by the fact that "[s]he actually had to quit her
10 job due to little more than a change in management style, her psychological inability to
11 adjust to some new tasks being asked of her, and an inability to effectively communicate
12 her frustrations to new management." In other words, an inference of "severe," rather
13 than "mild," depression or bipolar disorder should be drawn from the fact that she quit her
14 job for relatively minor reasons. But she testified that she quit her job because it was
15 impossible to fulfill her employer's expectations in the specific circumstances:

    Q.    And why did you stop doing that job?

    A.    The stress got too much for me one day, and I left.

    Q.    So you quit?

    A.    Yes.

    Q.    Due to stress?

    A.    Yes.

    Q.    What became stressful?

    A.    A project that the, at that time boss, wanted me to do. And I didn't have all the resources I need to do it correctly. One day I just sort of —

    Q.    Well what job was it?

    A.    It was organizing a conference, which was beyond my capabilities.

    Q.    But you said you didn't have enough what?

| | | |
|---|---|---|
| 1 | A. | The resources I needed. I was having a hard time getting a consistent computer to work with to make the calls that needed to be taken because they had someone else come in and work at my desk and computer. |
| 2 | | |
| 3 | Q. | So in other words, you needed more computer time and you weren't getting it? |
| 4 | | |
| 5 | A. | Right. |
| 6 | Q. | Well did you tell people about that? |
| 7 | A. | No one really seemed to be able to do anything about it. I asked for several different spots to sit, and there was always a reason why I could not use that space. |
| 8 | | |
| 9 | Q. | So you quit? |
| 10 | A. | Yes. |
| 11 | Q. | And you haven't worked since? |
| 12 | A. | That's correct. |
| 13 | . . . . | |
| 14 | A. | Well I was under pressure to get a job done that I felt I could not do. But they still expected me to do it. |
| 15 | . . . . | |
| 16 | Q. | But what if you were just having to do the receptionist job? |
| 17 | A. | That was getting more and more stressful as well. |
| 18 | Q. | And what was stressful about that? |
| 19 | A. | We had a new CEO, and he wasn't quite as lenient for my problems as the previous CEO. |
| 20 | | |
| 21 | Q. | Can you give me an example of what you mean by lenient with your problems? |
| 22 | A. | I normally would end up being out of work at least one or two or more days a month. |
| 23 | Q. | Because? |
| 24 | A. | Because of headaches, migraine headaches or, or other pain. |

She also testified that she had been laid off from a previous job because "sometimes things didn't get done that was supposed to get done."

- 11 -

Watts does not allege that she is too depressed to leave her house or that she experiences periods of mania that cause her to perform poorly at work. She claims only that working causes her stress, and she is much less stressed if she does not work. The record does not support finding that this alleged symptom— stress caused by working—is severe or results from her alleged bipolar disorder. Therefore, the ALJ did not err by finding Watts' statements concerning the intensity, persistence and limiting effects of the symptoms of her mental impairment not fully credible to the extent that she claims to have been unable to perform sedentary work with restrictions as defined in 20 C.F.R. § 404.1567(a).

IT IS THEREFORE ORDERED affirming the final decision of the Commissioner of Social Security denying Judith A. Watts disability benefits.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant against Plaintiff and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 29th day of August, 2011.

_____
Neil V. Wake
United States District Judge